## WILLIAM N. ALLEN

*v.*

## THE FRANCISCO SUGAR COMPANY et al.

[Decided April 5th, 1920.]

1. No majority, however large, has a right to divert any of the joint capital to any purpose not consistent with and growing out of the original fundamental joint intention as is stated in the certificate of incorporation.

2. A corporation organized prior to the act of 1899 (*P. L. 1899 p. 334*) is not authorized to lease its property to another corporation without the consent of all of its stockholders.

3. The act of 1899 does not empower a corporation to lease its property to a corporation of another state, but merely authorizes leases between corporations of this state.

4. Equity will not countenance a proceeding whereby a corporation leases its property to a foreign corporation for the purpose of avoiding payment of federal income taxes, such being against public policy.

On bill for injunction.

*Messrs. McCarter & English,* for the complainant.

*Messrs. Lindabury, Depue & Faulks,* for the defendants.

FIELDER, V. C.

The defendant the Francisco Sugar Company is a corporation organized under the General Corporation act of New Jersey, by certificate of incorporation dated February 20th, 1899, and filed in the office of the secretary of state three days later.   Complainant has been the owner of one thousand five hundred shares of the company's stock, of the par value of $100, since 1915. Practically all of the company's property consists of valuable sugar plantations in the island of Cuba, and its business has been very profitable, a dividend of twenty per cent. having been declared in 1919 on its capital stock, which is a million and a quarter dollars. ɪ Its directors have adopted a resolution, subject to the approval of the stockholders, proposing to form a Cuban corporation, in which the defendant corporation will own all the capital stock, and to then lease to the Cuban corporation the defendant company's land and personal property for the term of ten years and eight months, from November 1st, 1919, at a fixed annual rental which, it is estimated, will be sufficient to pay interest on the New Jersey company's outstanding bonds, meet its sinking fund requirements, pay its taxes and expenses and substantial dividends on its capital stock.   When complainant received notice of the meeting of stockholders, to which the resolution of the directors was to be submitted for approval, he filed his bill of complaint alleging that the directors and stockholders of the defendant company are without power to make such lease and praying that the company and its stockholders be enjoined from acting in the premises.   An order to show cause, with a temporary restraint, was issued and the matter now comes on for hearing on bill, affidavit and answering affidavits.   The bill does not allege that the purpose of the proposed plan is to avoid the payment of large federal income taxes to the United States, but the answering affidavits disclose such purpose, and on the hearing the question whether the plan was illegal as against public policy, was fully argued.

Defendants rely on *P. L. 1899 p. 334,* as the statutory authority for leasing its property.   I quote so much of the act as is applicable:

"Any corporation of this state * * * may hereafter, with the assent of two-thirds in interest of its stockholders, either in person or by proxy, lease its property and franchises to any corporation, and every corporation of this state is hereby authorized to take the lease, or any assignment thereof, for such terms and upon such conditions as may be agreed upon * * *."

Before the passage of this act, any scheme by which it was attempted to turn over the business and assets of a New Jersey corporation to any other corporation, without the consent of all the stockholders, was illegal. Our courts have said that each stockholder owns a share in the company's property and assets and is entitled to have a proportionate share in its profits. They have invested their capital in it, and in it alone, and they are entitled to every dollar that it earns. This is the agreement of the stockholders among themselves: They each contract with the other that their money shall be employed for the purposes specified in the certificate of incorporation, and for no other purpose. What the majority determine within the scope of their mutual contract, they each agree to abide by, but there their mutual contract ends, and no majority, however large, has a right to divert one cent of the joint capital to any purpose not consistent with, and growing out of, this original fundamental joint intention. *Kean* v. *Johnson,* 9 *N. J. Eq.* 401; *Black* v. *Delaware and Raritan Canal Co.,* 24 *N. J. Eq.* 455; *Mills* v. *Central Railroad Co.,* 41 *N. J. Eq.* 1; *Colgate* v. *United States Leather Co.,* 75 *N. J. Eq.* 229; *Riker* v. *United Drug Co.,* 79 *N. J. Eq.* 580.

The question is then presented whether, under *P. L. 1899 p. 334*, this lease is authorized. I am of the opinion that because this act was passed about a month after this company was organized, the act does not apply, and further, as I construe the act, it merely authorizes leases between corporations of this state.

The act is not supplemental to the General Corporation act, but an independent act, and its effect is to permit a change to be made in the purposes and objects for which corporations were theretofore formed. The power to give a lease to another corporation was not a lawful act which the corporation might undertake at the time of its incorporation, and therefore such power

could not have been in the minds of the incorporators or included within the objects set forth in their certificate. This statute is merely the consent of the state that the stockholders may do the thing therein provided for, but it cannot alter the contract as between the stockholders themselves, or as between the stockholders and the company, unless all agree to accept the act as a modification or amendment to their charter. *Einstein* v. *Raritan Woolen Mills, 74 N. J. Eq. 624; Colgate* v. *United States Leather Co., supra.*

Did the legislature intend by this act to permit a New Jersey corporation to lease all its property to a corporation organized under the laws of a foreign country? Can two-thirds of the stockholders of this company place all the assets of this company under the exclusive control of, an unknown board of directors of a Cuban corporation, even for a limited period and thereby deprive a citizen of the United States, who owns an interest in those assets, of the right to express his opinion by his vote, of the manner in which his property shall be safeguarded, managed and made productive and deprive him also of the right to the protection of our courts, when neither the *res* nor the person of the lessee are within our jurisdiction? I am unwilling to so hold where such legislative intent is not clearly expressed.

Effect must be given to the words "and every corporation of this state is hereby authorized to take the lease or any assignment thereof." It was argued on behalf of the defendants that they were used solely for the purpose of conferring power on a New Jersey corporation to accept a lease from another corporation of our state, but I do not think so. The act in question authorizes "every corporation of this state to take *the* lease," not "a lease," or "any lease," and the intent seems to me to be that *the* lease, which in the first part of the sentence is authorized to be made, shall be taken only by a corporation of this state. Our legislature could not authorize a corporation of another state to take the lease, because that power can be conferred only by the other state. The words "for such terms and upon such conditions as may be agreed upon," refer to the details of the lease and are intended to show that the provisions of the lease may be settled between the parties. Because these words do not follow the au-

thority to lease to "any corporation," but do follow the words "every corporation of this state," it would seem absurd to assume that the legislature intended to say that in a lease to a corporation of this state, the terms and conditions could be agreed upon, while saying nothing as to the terms and conditions of a lease to a corporation of another state or foreign country and this strengthens my belief that the legislature intended to limit the authority to lease to corporations of this state. Instances where the words "any corporation" were said not to include every corporation, foreign and domestic, are found in *Black* v. *Delaware and Raritan Canal Co., supra; Stewart* v. *Lehigh Valley Railroad Co., 38 N. J. Law 505, 514; Warren* v. *Pim, 36 N. J. Eq. 353, 359; Riker* v. *United Drug Co., supra.*

The avowed purpose to be accomplished by the proposed lease is to save the stockholders of the New Jersey corporation a million dollars of federal income taxes, which, it is estimated, the company would be required to pay the United States government. The statutory rights through which the defendant proposes to accomplish this purpose are, however, subject to the principles of equity, and it is the power and duty of this court to look through forms and disguises and base its decree upon the fundamental rights of all parties interested, and if the public welfare is concerned, to protect the rights of the public. The Federal Income Tax law, with its supplements and amendments, was enacted for the purpose of raising money to meet the extraordinary expenses with which our government was confronted as the result of the world war, and, subsequently, to successfully prosecute this country's part in that war and to defray war obligations which the country assumed, and must pay for years to come. To permit the stockholders of this company to go through the form of leasing their property, while retaining its substance, and not only receive profits therefrom in a substantial amount, but also add to those profits a large sum of money which the company is now required by law to pay as its *pro rata* share, with the rest of the public, for governmental, war and other purposes, is a proceeding which equity will not sanction, because it is against public policy. *Brooks* v. *Cooper, 50 N. J. Eq. 761; Driver* v. *Smith, 89 N. J. Eq. 339.*